Robert SIMS et al., Plaintiffs,

v.

**SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL UNION NO. 65 et al., Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL UNION NO. 65 et al., Defendants.**

Nos. C 71–100, C 71–1108.

United States District Court,
N. D. Ohio, E. D.

Dec. 8, 1972.

David L. Norman, Asst. Atty. Gen., Squire Padgett, David L. Rose, James S. Angus, and Francis A. Cronin, Sp. Attys., Dept. of Justice, Washington, D. C., for United States.

C. Lyonel Jones, Edward R. Stege, Jr. and Isabelle Katz Pinzlar, Legal Aid Society of Cleveland, Cleveland, Ohio, Dennis R. Yeager, and Richard Larson, National Employment Law Center, New York City, Nathaniel R. Jones, Gen. Counsel, National Assn. for the Advancement of Colored People, New York City, for private plaintiffs.

Arlene B. Steuer, Cozza, Steuer & Stavoli, Cleveland, Ohio, for Sheet Metal Workers International Assn., Local No. 65 and Joint Sheet Metal Apprenticeship Committee.

Edward J. Simerka, and David W. Byers, Schwartz, Einhart & Simerka, Cleveland, Ohio, for Sheet Metal Employers Assn.

## ORDER

KRUPANSKY, District Judge.

This is a class action initiated by the plaintiffs for declaratory judgment, injunctive relief, and damages to redress the deprivation of rights secured to the plaintiffs, and members of the class, by the Thirteenth and Fourteenth Amendments to the United States Constitution, by 42 U.S.C. §§ 1981 and 1983, and by Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

United States of America v. Sheet Metal Workers International Association, Local Union No. 65, et al., C71–1108, was on March 3, 1972, ordered consolidated for trial with these proceedings.

Jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1343(3)(4) relating to action under 42 U.S.C. § 2000e et seq.

Briefly summarized, plaintiffs' Complaint charges that the defendants, prior to July 2, 1965, the effective date of Title VII of the 1964 Civil Rights Act, maintained and perpetuated a referral system and an admission policy to journeyman and apprenticeship status which discriminated against them individually and collectively on the basis of race, color and national origin. Plaintiffs further assert that the past discrimination has continued into the present. The specific discriminatory admission requirements include an age limitation, a residence requirement, a formal education, non-job oriented written examinations, limited membership, limited written qualifying examinations and limited apprenticeship training programs.

The criteria of Rule 23(a) of the Federal Rules of Civil Procedure having been satisfied, plaintiffs' Motion to Proceed as a Class Action is granted. It Is Therefore Ordered, pursuant to Rule 23(c)(3), that the plaintiffs herein may maintain this action as individuals and as a Class Action on behalf of all minorities similarly situated.

Plaintiff Sims is a thirty-year old black with some related sheet metal employment primarily as a welder who applied for full journeyman status with Local No. 65 during May of 1968, and took its written examination but did not receive a qualifying score, and was thereafter refused admission to the Union. Since failing the examination, he has not applied for or taken a re-examination.

Plaintiffs Joseph Foster, a semi-skilled black sheet metal worker, and Joseph Young, a black, unskilled in the sheet metal trade, applied for and took the apprenticeship examination during July of 1970. Both individuals received qualifying grades and placed 21st and 26th respectively among a group of 130 participants. Plaintiffs Foster and Young had not, at the commencement of these proceedings, been indentured to

permit completion of the apprenticeship program requisite to qualifying for journeyman status.

Prevailing national and local economic conditions affecting the construction trades permitted the indenturing of the first 18 applicants in order of their respective grade achievement on the examination administered immediately preceding the commencement of this action.

On July 7, 1972, the Court Ordered all parties to the action to preserve the status quo pending final disposition of this case.

Defendant Sheet Metal Workers International Association, Local Union No. 65 organized in 1903 (hereinafter referred to as Local 65) is an unincorporated association within the meaning of Ohio Rev.Code § 1745.01. It is a labor organization with a membership of approximately 1,000 journeymen construction sheet metal workers, and 128 additional production line and limited members. It is the sole bargaining agent for its membership as to the conditions of employment, labor disputes, wages, hourly rates of pay, grievances, and all related matters. Local 65 also participates in the administration and implementation of the sheet metal apprenticeship program operated by the Joint Sheet Metal Apprenticeship Committee.

Defendant Joint Sheet Metal Apprenticeship Committee (hereinafter referred to as JAC) is an unincorporated association within the meaning of Ohio Rev.Code § 1745.01. It is composed of representatives from Local 65, the Sheet Metal and Air Conditioning Contractors National Association, and the Cleveland and Cuyahoga County Sheet Metal Contractors Association, Inc. Its offices are situated in the same building as those of Local 65. JAC administers and implements the apprenticeship program. It has the responsibility of establishing standards prerequisite to qualifying for application to take examinations including but not limited to age and residence requirements, education and experience requirements; it determines the fre-

quency of administering written examinations, oral interviews; the size of apprenticeship classes; the indenturing procedures; the scope and substance of written examinations; the grading procedures, and related matters. The apprenticeship program as initiated by Local 65 in 1920, provides vocational education, based upon related classroom instructions, and upon planned, supervised, progressive on-the-job training.

Defendant Sheet Metal and Air Conditioning Contractors National Association —Cleveland (formerly known as the Sheet Metal Employers Association and hereinafter referred to as Employers Association) is a nonprofit organization organized under the laws of the State of Ohio. The Employers Association is a party to the collective bargaining agreement executed with defendant Local 65.

Defendant Cuyahoga County Sheet Metal Contractors Association, Inc. (hereinafter referred to as Contractors Association) is a nonprofit corporation organized under the laws of the State of Ohio. It also is a party to the collective bargaining agreement executed with Local 65, and is also represented on the JAC.

Apparent from the record, prior to the summer of 1963, Local 65 and the JAC pursued a historical pattern of racial discrimination in membership admission policies.

Born of confrontation and controversy surrounding the Cleveland Mall Construction Project, the testing procedures here in issue emerged as the product of exhaustive negotiations among a coalition of civil rights groups including the Urban League, NAACP, Job Seekers, Freedom Fighters collectively known as the United Freedom Movement, the Cleveland Chamber of Commerce, the Cleveland Community Relations Board, the Mayor of the City of Cleveland, and officers of Local 65 and JAC.

The substance, form, and administration of the journeyman's written examination first administered in 1963 was the subject of accord between qualified

knowledgeable representatives of the negotiating parties.

Aptitude for apprenticeship training was initially determined by written examination immediately subsequent to the effective date of Civil Rights Act of 1964 by the administration of the Flanagan Aptitude Tests to applicants for the program.

The gravamen of plaintiffs' present charge is that the adopted admission practices, although fair in form, fail to remove the barriers that have operated in the past to favor an identifiable group of white employees and continue to exclude minorities from achieving an equality of employment opportunities contemplated by the Civil Rights Act.

Plaintiffs seek an injunction against age, residency, education, and testing requirements and urge immediate admission upon application to journeyman status of plaintiff Sims and all others similarly situated, imposition of a quota insuring membership in each new apprenticeship class of a minimum of 50 percent minorities with no fewer than 25 apprentices in each such class to be selected by lot from available lists of interested minority applicants.

Defendants counter that existing admission practices for journeyman status and the apprenticeship program were designed to test and reflect competency, aptitude, ability, and desire required to maintain minimal performance standards of the craft, and to insure public confidence in its membership and the trade generally.

Interpreting the Civil Rights Act of 1964, Chief Justice Burger, speaking for the majority of the Court, in Griggs v. Duke Power Company, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) defined the criteria applicable herein:

> The Act proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation. The touchstone is business necessity. If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited. *Supra,* at 431, 91 S.Ct. at 853.

Thus, the thrust of the Act is to the consequences of employment practices, not simply the motivation.

Elucidating, the Court in *Griggs* summarized:

> Nothing in the Act precludes the use of testing or measuring procedures; obviously they are useful. What Congress has forbidden is giving these devices and mechanisms controlling force unless they are demonstrably a reasonable measure of job performance. Congress has not commanded that the less qualified be preferred over the better qualified simply because of minority origins. Far from disparaging job qualifications as such, Congress has made such qualifications the controlling factor, so that race, religion, nationality, and sex become irrelevant. What Congress has commanded is that any tests used must measure the person for the job and not the person in the abstract. *Supra,* at 436, 91 S.Ct. at 856.

Examination of the demands expected of Sheet Metal Craftsmen reflect some degree of proficiency and understanding of layout, fabrication, assembly and installation of plane and solid metal geometrical forms i.e., rounds, half-rounds, rectangles, parallelograms, prisms, cylinders, cones, pyramids, squares, triangles, and other projections of lateral surfaces for residential, commercial, or industrial application within the dictates of rotating job assignments either in the shop or in the field.

Inherent to the wide range of mechanical aptitudes of the craft is a basic knowledge of blueprint interpretation; metals and their uses; operation of fabricating machines and equipment i.e., shears, brakes, bending rolls, punch and drill presses to cut, bond, form and straighten metal; soldering and welding locks, seams and joints and the exercise of judgment and precision.

Proficiency in the craft, it would appear, is grounded in an ability to read,

write and apply elementary principles of mathematics, decimals, simple fractions and elementary plane and solid geometry.

Analysis of the Journeyman Entrance Examination as devised by Melbourne F. Wargo in 1963, reflects a direct relationship to job performance requirements of the craft in an elementary form.[1]

The same conclusion is apparent upon an examination of the Flanagan Aptitude & Industrial Tests designed to measure the competency, aptitude and desire of the apprentice applicant.

However, at times the pragmatic may be misleading and so must be re-examined in the light of available expertise.

Convincing to the Court are the validation studies of the Wargo Journeyman and Flanagan Aptitude and Industrial Tests to job performance conducted by Dr. John C. Denton, an eminent Industrial Psychologist, in accordance with the standards of the Equal Employment Opportunities Commission, Guidelines on Employee Selection Procedures, Title 29, Chapter XIV § 1607, C.F.R. and those established by the American Psychological Association.

Aware of the limited size of the available sample test group used for the validation studies, the results of which were adjusted to compensate for the group size factor in accordance with accepted standards of the American Psychological Association, Dr. Denton's conclusions that the Wargo Journeyman and Flanagan Tests are job-related and not unfairly discriminatory, are significant and bear directly upon job relatedness.

■ Viewing the record in its entirety, the Court finds that the Wargo and Flanagan tests are job-related within the pronouncements of *Griggs, supra.*

Job-relatedness of the tests having been determined, the more illusive issue concerning the impact of cultural bias, if any, upon the testing practices is academic. Notwithstanding the testimony of plaintiffs' expert witness regarding the non-existence of written or verbal tests totally free of cultural bias, the tests here in question have been validated as being fair to both blacks and whites.

Evidence indicates that Local 65 does not maintain an exclusive hiring hall referral system for its members, but rather encourages independent employment arrangements as between the parties. As an accommodation for its membership it maintains a referral list available to all on a purely voluntary basis.

■ To the extent that any future referral service is provided, the Court directs that members be referred on a first in, first out basis. Referral records shall be in written form, open for inspection to the membership upon reasonable notice and shall be retained as a business record of the Union.

Although the record does not support findings of post-Act discrimination the continuing effect of past discriminatory practices is inescapable.

■ In an effort to alleviate the continuing effect of past discrimination, the Court orders the immediate implementation of the following affirmative action program by the defendants herein:

JOINT APPRENTICE COMMITTEE

I. General statement

    A. The JAC, on or before March 31, 1973, will implement and comply with the Secretary of Labor's Rules and Regulations entitled "Equal

1. Melbourne F. Wargo is a journeyman sheet metal worker of 27 years with formal educational training at the Elyria Institute, War Manpower Training Program and Kent State University Training Program; he was an instructor of vocational education at Elyria High School and its adult education program; he instructed at Max Hayes Trade School as a member of its faculty and in its adult education program; he collaborated in formulating sheet metal tests for both the Ohio State Department of Education and the Civil Service Commission of Cleveland.

Employment Opportunity in Apprentice Training", 36 C.F.R. § 6810, by amending the Apprenticeship Standards to include:

1. Adoption of the following equal opportunity pledge:

   The recruitment, selection, employment, and training of apprentices during their apprenticeship, shall be without discrimination because of race, color, religion, national origin, or sex. The sponsor will take affirmative action to provide equal opportunity in apprenticeship and will operate the apprenticeship program as required under Title 29 of the C.F.R., Part 30.

2. Revising within ninety (90) days the informational booklet explaining the apprentice program to include the equal opportunity pledge and specific information on selection procedures. Distribution of the booklet, as revised, will be made to Boards of Education, throughout the jurisdiction of Local 65, including the Cleveland Board of Education. Copies of the booklet shall be placed with agencies and offices in the minority community as, for example, The Workers Defense League, Youth Opportunity Commission, Urban League, and National Association for the Advancement of Colored Poeple;

3. Offering assistance to Boards of Education in the geographical area subject to the jurisdiction of Local 65 as to courses taught and subjects covered in vocational training that will assist students to prepare for the apprentice program;

4. Arranging appearances at vocational seminars with area schools, and presenting self-contained programs on the craft including the use of a special craft film. Efforts should be made to utilize minority journeymen and apprentices when possible in these programs;

5. Emphasizing the current program of arranging plant tours for school students;

6. Providing, at least thirty (30) days prior to the date of any JAC qualifying examination for selection to the eligible pool, announcements describing the details for application, including the date and place of the qualifying examination in the "Call and Post", and with the following organizations: Workers Defense League, Youth Opportunity Commission, National Association for the Advancement of Colored People, Urban League and U. S. Employment Offices;

7. Providing, upon request at the JAC headquarters, a description of the examination, including subjects to be examined upon, sample questions, and reference material helpful in preparation for the examination.

B. Apprenticeship eligibility examinations shall be conducted biannually. A new apprenticeship class with a minimum of ten (10) trainees shall be inaugurated in January and July of each year.

C. Eligible Pool

1. A pool of eligible applicants between the ages of 17–26 shall be created (with four (4) year allowance for active military service) with the physical abilities to perform the work involved;

2. Qualifications for appointment to the eligible pool will be:

   a. Attainment of a minimum score of sixty percent (60%) on a job-related aptitude examination administered and graded by a Board of Examiners as hereinafter created;

   b. Applications for any examination shall be filed with the JAC not later than the tenth day im-

mediately preceding the date of such scheduled examination.

D. Qualifying applicants will remain in the eligible pool for a period of two (2) years.

II. Board of Examiners:

A. A Board of Examiners consisting of three (3) members shall be created to draft, administer and score examinations.

B. The Board shall be selected from qualified junior high school sheet metal industrial arts teachers, at least one of whom shall be from Max Hayes Trade School.

1. One shall be designated by the Workers Defense League or a similarly qualified representative of the minority groups;

2. One shall be designated by Local 65;

3. One shall be designated by the hereinabove appointed two members;

4. Each member shall serve for a term of three (3) years or until his successor is appointed and duly qualified.

C. The Board of Examiners shall determine by majority rule the substance and subject matter of any examination as well as the composition and form of the questions.

D. The Board of Examiners, or any individual member thereof shall administer examinations.

E. Examinations shall be scored or graded by the Board of Examiners and resultant grades communicated to applicants by registered or certified mail, return receipt requested, within thirty (30) days after the date of examination.

F. Examination dates shall be determined and announced at least sixty (60) days in advance thereof and all applicants of record notified by registered or certified mail, return receipt requested, thirty (30) days in advance of the examination date; applicants filing within the above

thirty (30) day period shall be supplied with a written notice of the examination date at the time application is filed; if such application is received by mail, the date of examination shall be posted to applicant, registered or certified mail, return receipt requested, within five (5) days of receipt thereof.

G. A description of the examination and the subjects to be examined upon, including sample questions and reference material helpful in preparation for the examination, shall be made available upon request at the JAC headquarters.

H. Thirty (30) days prior to any scheduled examination the JAC shall make available to the Workers Defense League upon request the names and addresses of all minority applicants registered for the said examination.

I. Examinations shall be graded by a Board of Examiners as hereinabove created and shall remain the property of the JAC subject, however, to review and inspection by applicant or his duly appointed representative upon reasonable notice.

III. Indenturing

A. Qualified applicants shall be indentured from the eligible pool in the following manner:

1. After each examination, qualifying minority applicants shall be listed from the eligible pool in the order of their respective grade achievement commencing with the highest to the lowest;

2. Names of non-minority qualifying applicants shall be similarly arranged on a second list;

3. Indenturing shall be on an alternating basis—one (1) minority selection, one (1) non-minority selection, etc. from the appropriate listing until 33⅓ percent of the total requirement for the new apprenticeship class has been satisfied;

4. The balance of the apprenticeship class requirement shall be indentured from the eligible pool by lottery administered by the Board of Examiners;

5. Indenturing in the manner above set forth shall be effective thru December 31, 1979, subsequent to which date selection shall be on the basis of test score achievement;

6. Oral interviews shall not be weighted or constitute any part of the test score achievement;

7. Applicants may, during the effective two (2) year period of examination grades, apply for re-examination to achieve a higher rank within the eligible pool. For selection purposes only the highest achievement score will be considered.

## JOURNEYMAN

Sheet Metal Workers International Association, Local Union No. 65, shall, on or before March 31, 1973, amend its bylaws relating to qualifications and procedures for membership as follows:

I. Admission to membership in Local 65 shall be by:

A. Application and

1. Successful completion of a uniformly applicable Journeyman Sheet Metal Test; and/or

2. Successful completion of the one (1) year conditional Journeyman Work Study Program as hereinafter provided; or

B. Completion of the apprenticeship training program, or

C. Transfer from another local.

II. Applications:

A. Applicant shall have been a resident within the jurisdictional territory of Local 65 for one (1) year next preceding the filing of an application.

B. Applicant shall present evidence of employment as a sheet metal worker for at least three (3) years, supported by a statement from a current employer together with the names and addresses of former employers in the trade;

C. Applications will be accompanied by a $15.00 examination fee.

III. Examinations:

A. Examinations for journeyman status shall be given quarterly;

B. The examination shall be administered within the standards and guidelines set forth in the Sheet Metal Affirmative Action Program presently existing between the Local 65 and the various contractors' associations in the area and the order of this Court;

C. Examinations will be conducted at Max Hayes Trade School;

D. Examinations shall be administered and graded by a Board of Examiners hereinbefore created and shall remain the property of the Local 65 subject, however, to review and inspection by applicant or his duly appointed representative upon reasonable notice;

E. Qualifying or passing score shall be seventy percent (70%);

F. Oral interviews shall not be weighted or constitute any part of the test score achievement.

IV. Board of Examiners:

A. The Board of Examiners hereinbefore created shall determine by majority rule the substance and subject matter of the examination as well as the composition and form of the questions;

B. The Board of Examiners, or any individual member thereof shall administer the examinations;

C. Examination dates shall be determined and announced in at least two (2) publications of daily general circulation sixty (60) days in advance thereof one of which shall be the "Call and Post", and posted with Workers Defense League, Youth Opportunity Commission, National Association for the Advancement of

Colored People, Urban League, and U. S. Employment Offices, and all applicants of record shall be notified by registered or certified mail, return receipt requested, thirty (30) days in advance of the examination date; applicants filing within the above thirty (30) day period shall be supplied with a written notice of the examination date at the time application is filed; if such application is received by mail, the date of examination shall be posted to applicant, registered or certified mail, return receipt requested, within five (5) days of receipt thereof;

D. Examinations shall be scored or graded by the Board of Examiners and resultant grades communicated to applicants by registered or certified mail, return receipt requested, within thirty (30) days after the date of the examination;

E. A description of the examination, including the subject to be examined upon, sample questions and reference material helpful in preparation for the examination shall be made available upon request at the Local 65 headquarters;

F. Thirty (30) days prior to any scheduled examination the secretary of the Local 65 shall make available to the Workers Defense League, upon request, and with the applicant's approval the names and addresses of all minority applicants registered for the said examination;

G. Applicants having achieved a passing score or level of achievement in those portions of the exami-

nation designed to measure experience, mechanical skill, dexterity and aptitude, but who have failed those portions of the examination designed to measure other proficiencies such as reading, writing, and arithmetic, and other subjects, may commence a one (1) year Journeyman Work Study Program by enrollment in an approved adult school program within six (6) months of the date of announcement of the examination results and shall register for and successfully complete courses designated by the Board of Examiners within the prescribed time;

H. Upon receiving a qualifying score on the Journeyman Sheet Metal Test, or in the alternative upon the successful completion of the one (1) year conditional Journeyman Work Study Program as determined by the Board of Examiners, the applicant shall be admitted into full journeyman status with the Local 65 subject to all rules, provisions, regulations, and initiation fees normally provided for in the bylaws of the Local 65;

I. Enrollment and attendance in a Work Study Program will not preclude applicant from reapplying for re-examination during such period of enrollment. Applicants registered in a one (1) year Work Study Program who remain in good standing therein shall during said period be granted a conditional rating as provided in paragraph 9, page 6 of Sheet Metal Affirmative Action Program as hereby modified [2];

---

2. Sheet Metal Affirmative Action Program, ¶ 9, p. 6.

Where an applicant for rating as a journeyman shall achieve a passing grade or level of achievement in those portions of the test which shall measure experience, mechanical skill, dexterity and aptitude but, by reason of lack of opportunity or other educational deficiency, shall fail those portions of the test which shall measure the essential academic proficiencies in reading and mathematics, including arithmetic, algebra and basic geome-

try, such applicant shall be granted a conditional rating. He shall be rated for employment as a journeyman for a term of one year upon condition that he shall forthwith register at and regularly attend an approved adult night school program and shall maintain satisfactory course attainment and achievement in these studies . . . . In the event he shall fail to attain the requisite proficiency within the said period of one year, he shall be removed as a conditional journeyman unless, by reason of exceptional cir-

J. This nation's heritage is replete with examples of men and women whose inherent mental capacities and abilities are not reflected in terms of diplomas or degrees. Accordingly, the conventional badges of accomplishment heretofore required, namely a high school diploma or its equivalent are hereby invalidated as a condition precedent for journeyman or apprenticeship status;

K. The complaint procedure shall be as hereinafter set forth. Any complaint which is not resolved by the parties hereto within the ten (10) day period provided therein shall be submitted to the American Arbitration Association with a request for appointment of an arbitrator by the secretary of the Local 65.

Each Board Examiner appointed as a result of this Order may be compensated by the respective appointing organizations, but such compensation shall not exceed a rate of $7.00 per hour. Local 65 and/or the JAC shall provide all funds to insure payment of reasonable and necessary expenses including compensation for the third appointee to either Board of Examiners at a rate not exceeding $7.00 per hour incurred on behalf of its individual and/or their joint assignments.

## COMPLAINT PROCEDURE

I. Any applicant or apprentice who believes that he has been discriminated against on the basis of race, creed, color, or national origin with regard to apprenticeship or journeyman status or that the equal opportunity standards have not been followed in his case may file a complaint with the secretary of the JAC. The complaint shall be in writing and shall be signed by the complainant. It must include the name, address, and telephone number of the person allegedly discriminated against and a description of the circumstances of the alleged discrimination for failure to follow equal opportunity standards. The complaint must be filed not later than ninety (90) days from the date of the alleged discrimination or specified failure to follow equal opportunity standards.

II. Upon receipt of any complaint, the secretary of the JAC shall:

A. Prepare and maintain a complete case file for each complaint received. It shall contain the original complaint, reports of investigations and visits and correspondence with the employer, and others regarding all phases of the case in chronological order, including recommendations made and final disposition of the case;

B. In the event the complaint has been satisfactorily adjusted within ten (10) days from the date of its filing, the case shall be closed and the parties appropriately informed by registered or certified mail, return receipt requested;

C. In the event a complaint has not been resolved within ten (10) days of the date of filing thereof, the secretary of the JAC will forthwith request the American Arbitration Association to designate without consultation with any party affected hereby an arbitrator to conduct, in accordance with its labor arbitration rules and regulations, a hearing on the complaint within sixty (60) days from the date of such request;

D. The decision of the arbitrator shall be final and binding without recourse to further appeal or other original action to either the Ohio Civil Rights Commission or the Equal Employment Opportunity Commission or as a grievance under the collective bargaining agreement, subject to a review upon the record

cumstances, the said probationary period shall be extended for such additional period as the committee in charge of test

and qualification (Board of Examiners) shall, in its discretion, deem appropriate.

by this Court filed within twenty (20) days from the date of the mailing of arbitrator's decision.

E. Arbitration expenses shall be pro-rated equally by the parties to the proceeding.

■ The effectiveness, thoroughness and frequency of the efforts by Local 65 and the JAC to inform minority group members that admission practices to journeyman status and the apprenticeship training program are being operated on a non-discriminatory manner must be viewed in the light of (1) the fact that Negroes were excluded until 1964, (2) the fact that historically, prior to the Act, preferences were given to relatives of members, and (3) the fact that individual Union members will inevitably continue to encourage their offspring to seize the opportunities available to them in the trade.

When so viewed, the efforts of the defendants fall short of what is necessary to make minorities aware of present available opportunities. While it is not the intention of the Court to minimize what has been accomplished by Local 65 and the JAC in making the public aware of the non-discriminatory character of the admission practices—more is reasonably expected. The school appearances have not been organized or systematic. The bulletins, publications and public relations can be more frequent and definative to emphasize more forcefully that programs are open to persons of every race and color.

The Court recognizes that the best publicity programs will not fully convince all minority group members that they now have the opportunity to qualify for journeyman status or for apprenticeship training as the case may be, nonetheless it is mandatory for the defendants to create an awareness of available opportunities by the adoption of a public information program consistent with the views expressed herein. United States v. Sheet Metal Workers Int. Assn. 36, 416 F.2d 123 (8th Cir. 1969); United States v. I.B.E.W. Local 38, 428 F.2d 144 (6th Cir. 1970), cert. denied 400 U. S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970).

Having concluded that:

1. Provisions of the Civil Rights Act pertaining to employment opportunities as interpreted both by the EEOC and *Griggs, supra* do not preclude the use of written testing or measuring procedures and are useful;

2. The skills here involved are directly related to mechanical capability, comprehension, dexterity, and a knowledge of mathematics all dependent upon the learning process;

3. The tests here in issue are, pragmatically and through available validation, valid indicators of job performance and, therefore, job related. The Court has ordered affirmative action and has delineated the manner in which the referral system, if used, shall be implemented; modified admission through the Journeyman Sheet Metal Test procedure by providing for an alternate means of admission to journeyman status through the one (1) year Journeyman Work Study Program; standardized admission practices for apprenticeship training and insured minority participation therein obligated the defendants to undertake an effective public information program to stimulate minorities of an awareness to the opportunities in the trade available on a non-discriminatory basis in an effort to eliminate any continuing effects of pre-Act discrimination.

Accordingly, Robert Sims having failed to achieve a qualifying score on the Journeyman Sheet Metal Test, his cause of action is dismissed; the qualifying scores on the apprenticeship admission tests received by Joseph Foster and Joseph Young are certified for an additional two (2) years from January 1, 1973; the defendants and each of them, shall forthwith commence the implementation of this Order, and accept,

process, and examine the plaintiffs' herein and all other members of the class pursuant to the terms hereof.

The Court shall retain continuing jurisdiction of this case for a period of three (3) years from January 1, 1973, unless thereafter extended for cause shown.

This opinion shall constitute the Court's Findings of Fact and Conclusions of Law; Fed.R.Civ.P. 52(a).

It is so ordered.