Robert SIMS et al., Plaintiffs-Appellants,

v.

SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL UNION NO. 65 et al., Defendants-Appellees.

Nos. 73–1264, 73–1265.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 11, 1973.

Decided Dec. 19, 1973.

Edward R. Stege, Jr., Cleveland, Ohio, for Robert Sims, and others; C. Lyonel Jones, Isabelle K. Pinzler, Cleveland, Ohio, Dennis R. Yeager, E. Richard Larson, Nathaniel R. Jones, New York City, on briefs.

Robert T. Moore, Atty., Dept. of Justice, Washington, D. C., for the United States; J. Stanley Pottinger, Asst. Atty. Gen., Frederick M. Coleman, U. S. Atty., David L. Rose, Squire Padgett, James Angus, Francis Cronin, Attys., Dept. of Justice, Washington, D. C., on briefs.

Edward J. Simerka, Arlene B. Steuer, Cleveland, Ohio, for defendants-appellees; David W. Byers, Schwartz, Einhart & Simerka, Cleveland, Ohio, on briefs, Cozza, Steuer & Stavole, Cleveland, Ohio, of counsel.

Before CELEBREZZE, PECK and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

This case is concerned with alleged racial discrimination in the sheet metal trades of the Greater Cleveland area. On January 28, 1971 the individual plaintiffs filed a class action for declaratory and injunctive relief and damages for deprivation of rights secured by the Thirteenth and Fourteenth Amendments and by 42 U.S.C. § 1981 and § 1983 and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). The defendant Sheet Metal Workers International Association, Local Union No. 65 (hereafter Local 65) is the primary source of workers for union construction jobs in the sheet metal crafts in the Greater Cleveland area. The defendant Joint Sheet Metal Apprenticeship Committee (hereafter JAC) is a joint labor-management committee which supervises and controls apprenticeship programs on behalf of Local 65 and the two employer association defendants, with general responsibility for establishing apprenticeship standards. The defendants Sheet Metal and Air Conditioning Contractors National Association (hereafter SMACNA) and Cuyahoga County Sheet Metal Contractors Association (hereafter Cuyahoga Association) together control substantially all sheet metal contracting work in the area and are signatories to a collective bargaining agreement with Local 65.

On November 11, 1971 the United States of America filed an action against the same defendants charging

discriminatory practices in violation of Title VII of the Civil Rights Act of 1964 and interference with the provisions of Presidential Executive Order No. 11246. The two actions were consolidated for trial by an order entered March 9, 1972. There were two hearings before the district court sitting without a jury. The first hearing was on a motion by all of the plaintiffs for a preliminary injunction, and resulted in a denial of the motion. The court did enter an order requiring all parties to preserve the status quo until a final decision on the merits. The order which denied the motion for preliminary injunction also held that the individual plaintiffs could not recover under 42 U.S.C. § 1983 because the defendants were not public agencies or acting under state law.

Thereafter an extended hearing was held on the merits and concluded with an order of the district court filed on December 8, 1972. This order is reported at 353 F.Supp. 22–33. The published order contains a full statement of the facts and the issues before the district court and these details will not be repeated in this opinion. Two of the most significant findings made by the district court are:

> Apparent from the record, prior to the summer of 1963, Local 65 and the JAC pursued a historical pattern of racial discrimination in membership admission policies. 353 F.Supp. at 24.

and

> Although the record does not support findings of post-Act discrimination the continuing effect of past discriminatory practices in inescapable. 353 F.Supp. at 26.

Based on the findings quoted above and others set forth in the order, the court directed the immediate implementation of a program of affirmative action which is set forth in detail in the order. The individual plaintiffs as well as the government have appealed and the two appeals were heard together in this court. No cross-appeal was filed by any of the defendants. A number of issues are presented and will be treated separately.

### The Finding of No Post-Act Discrimination

The finding of a historical pattern of racial discrimination in the membership admission policies of Local 65 and JAC prior to the effective date of the Civil Rights Act of 1964 is not questioned on appeal and is fully supported by the record. Likewise, the finding of continuing effect of the past discriminatory practices is unchallenged here. The admission policies have had a differential impact on minority employment opportunities. The plaintiffs maintain, however, that the standards for admission to Local 65 as a journeyman sheet metal worker adopted after a racial disturbance involving the Cleveland Mall construction project in 1963 and the standards adopted for admission to the apprenticeship program of JAC adopted in 1965 have failed to eliminate the discriminatory policies complained of. Central to this issue is the question of whether the testing procedures adopted by Local 65 and JAC effectively eliminated the discriminatory pattern of the past. A great deal of evidence was received from witnesses on each side who were qualified industrial psychologists. Although it was sharply disputed by testimony of an expert produced by the plaintiffs, the detailed testimony of Dr. John C. Denton, who testified for the defendants, supports the findings of the district court that both the journeyman entry examination of Local 65 and the series of tests used by JAC satisfy the requirements of § 703(h), 42 U.S.C. § 2000e–2(h) and the guidelines on employee selection procedures promulgated by EEOC, 29 CFR § 1607. The district court was justified in finding that the defendants had sustained the burden of proving the validity of both the journeyman's test and the battery of five tests used in the apprenticeship program. The findings with respect to the facial

fairness and validity of the various tests are findings of fact which are not clearly erroneous. Rule 52(a), Fed.R.Civ.P.

■■ However, it is not enough that the tests be fair on their face and be validated as proper measurements of job-related skills. The Equal Employment Opportunity Act of 1964 is concerned with the consequences of employment practices and a test which is designed and intended as a neutral measure of job-related skills and knowledge may violate the Act if its actual use furthers racial discrimination. Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). At the time of the trial of this case, seven years after the effective date of the Civil Rights Act of 1964, Local 65 had approximately 1,000 journeymen members, thirty-five of whom were black. Since 1965 each black applicant for journeyman status in Local 65 has been required to take the journeyman test and none has passed. During this same period several white applicants have been admitted to full membership in Local 65 or allowed to work on permits in spite of having failed the test. No guidelines for grading the test were furnished to the examination committee and the passing grade requirement has not been constant. In addition, a less complicated "decking" test has been administered to at least one white applicant but no black applicant has been advised of the possibility of taking this test rather than the regular journeyman's test. The "decking" test is concerned with a specialized area of sheet metal work rather than the general duties of most journeymen. Nevertheless, once admitted to membership, a person who enters by way of the "decking" test has all rights and privileges of a journeyman. In some instances the examination committee has recommended that applicants be admitted to membership without a test upon a vote of the membership. In a union which was all white prior to 1963 as a result of discriminatory practices and whose examination committee remains all white and whose membership is more

than 95 per cent white, continued discretion in the testing committee either to require or waive an examination is a means of perpetuating past discrimination. Rowe v. General Motors Corp., 457 F.2d 348 (5th Cir. 1972). In Griggs v. Duke Power Co., *supra*, the Supreme Court held:

Under the Act, practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to "freeze" the status quo of prior discriminatory employment practices. 401 U.S. at 430, 91 S.Ct. at 853.

■■ An examination of the record in this case compels the conclusion that Local 65 has established practices which employ tests that are fair in form, but discriminatory in effect because, as administered, they have failed to remove the vestiges of past discrimination. In accord with the pronouncement in *Griggs,* this court has held that the present use of a system or procedure which contains no discriminating features may violate Title VII of the 1964 Civil Rights Act if it serves to preserve longstanding past discrimination. Bailey v. American Tobacco Co., 462 F.2d 160 (6th Cir. 1972). The same conclusion was reached in a case decided prior to the decision in the *Griggs* case. United States v. I.B.E.W., Local No. 38, 428 F.2d 144 (6th Cir.), cert. denied, 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970). We therefore hold that the district court erred in its finding that there was no post-Act discrimination in this case insofar as it relates to the journeyman admission requirements of Local 65. The "clearly erroneous" principle of Rule 52(a) does not apply since this finding resulted from an erroneous application of controlling legal principles. See Rowe v. General Motors Corp., *supra,* at 356 n. 15.

In contrast to the continued inability of apparently qualified black sheet metal workers to achieve full membership in Local 65, the record of the apprenticeship program conducted by JAC, at least

in the four years immediately prior to the trial is impressive. While only two blacks had completed the four-year apprenticeship program at the time of trial and only 3.8 per cent of the fourth-year apprenticeship class was black, on the other hand, blacks comprised 34 per cent, 25 per cent and 16.6 per cent of the third, second, and first-year classes respectively. At that time more than 24 per cent of all indentured apprentices in sheet metal trades were black. This is clear evidence that the steps taken by JAC after the adoption of the Equal Employment Opportunity Act were effective and that the effects of the past discriminatory practices, insofar as the apprenticeship program is concerned, were being eliminated.

### The Affirmative Action Program

This case is quite different from United States v. I.B.E.W., Local No. 38, *supra*, where the district court failed to order affirmative action even though it made a finding of past discrimination, the effects of which continued to the time of the trial, District Judge Krupansky formulated and put into effect a comprehensive affirmative action program and has retained continuing jurisdiction of the case for a period of three years from January 1, 1973. The affirmative action program deals with the functions of the JAC and provides detailed procedures which will publicize the availability of apprenticeship programs to minority members of the community and will guarantee a fair selection of minority members for indenture from among those who successfully complete the apprenticeship examination. The only feature of the JAC portion of the affirmative action program which we find deficient is the restriction of the eligible pool of applicants to those between the ages of 17 and 26. There may be minority members of the Greater Cleveland community who would have qualified for indenture prior to elimination of the weighted oral interview as a basis of a decision for recommendation

of candidates and who are now above the age of 26. This may be remedied by retaining the maximum age of 26 for entering the apprenticeship program provided Local 65 is required to waive its maximum age requirement for entering apprenticeship status for all minority group members who, since the effective date of the Act, passed the apprenticeship examination but were not taken into the program. Local 65 should be required to disclose the names of all such persons to the court and be required to notify these individuals by registered or certified mail of their qualification under this provision.

With respect to the journeyman examination, the district court's affirmative action should eliminate future discrimination. In order to eliminate the continuing results of past discrimination, all black applicants who have taken and failed the examination prior to implementation of the affirmative action program must be given an opportunity to obtain membership in Local 65 either by successful completion of the journeyman test administered by the Board of Examiners or successful completion of the conditional journeyman program. Local 65 shall notify these persons of this opportunity for seeking membership by registered or certified mail after informing the district court of their names. In all other respects we conclude that the provisions in the affirmative action program relating to qualification and procedure for journeyman membership in Local 65 and the complaint procedure with regard to apprenticeship and journeyman status fully comply with our holding in United States v. Local Union No. 212, I.B.E.W., 472 F.2d 634, 636 (6th Cir. 1973) that,

When a court has determined that a violation of Title VII has occurred, it is vested with broad remedial power to remove the vestiges of past discrimination and to eliminate and prevent both present and future barriers "to the full enjoyment of equal job op-

portunities by qualified black workers."

■ All plaintiffs have maintained that the program of affirmative action is deficient in that it fails to require Local 65 to join the Cleveland Equal Employment Plan (CEEP) which is an affirmative action program designed to recruit and train minority individuals for the construction industry. In view of the detailed provisions of the affirmative action program ordered by the district court, particularly the provision for the granting of a conditional rating and those provisions which look to publicity and recruitment from within minority groups, it was not error to fail to require Local 65 to join CEEP. If the affirmative action program proves to be insufficient, the district court may review its CEEP determination at a later date under its retained jurisdiction.

### Other Remedies

■ Having found that post-Act discrimination did occur, we must deal with the demand of the complaint that back pay and attorney's fees be awarded as provided by 42 U.S.C. § 2000e–5(g) and § 2000e–5(k). We have recently held that, ". . . the clear intent of Congress that the grant of authority under Title VII should be broadly read and applied mandate an award of back pay unless exceptional circumstances are present." Head v. Timken Roller Bearing Co., 486 F.2d 870 (6th Cir. 1973). Since the district court found no post-Act discrimination, it did not deal with the issue of back pay or attorney's fees. These are matters within the discretion of the trial judge who should make findings thereon in accordance with our holding in Head v. Timken Roller Bearing Co., *supra*, and the authorities cited therein. If it is concluded that back pay or attorney's fees, or both, should be awarded, a determination will have to be made of whether either SMACNA or Cuyahoga Association is an employer within the meaning of the Act.

In view of the relief granted under Title VII it is not necessary to decide whether recovery could have been had under 42 U.S.C. § 1981.

The cause is remanded for the further steps set forth in this opinion, and in all other respects the judgment of the district court is affirmed.