AFRO AMERICAN PATROLMENS
LEAGUE et al., Plaintiffs,

Fraternal Order of Police Lodge #40,
Applicant for Intervention-
Appellant,

v.

Robert DUCK, Police Chief of Toledo,
et al., Defendants-Appellees.

AFRO AMERICAN PATROLMENS
LEAGUE et al., Plaintiffs,

Toledo Police Patrolmen's Association,
Applicant for Intervention-
Appellant,

v.

Robert DUCK et al.

AFRO AMERICAN PATROLMENS
LEAGUE et al., Plaintiffs-
Appellees,

v.

Robert DUCK et al., Defendants-
Appellants,

John Bryant et al., Defendants
Intervenors.

AFRO AMERICAN PATROLMENS
LEAGUE et al., Plaintiffs-
Appellees,

v.

Robert DUCK et al., Defendants,

John Bryant et al., Applicants for
Intervention-Appellants.

Nos. 74–1135, 74–1136, 74–1266 and 74–1267.

United States Court of Appeals,
Sixth Circuit.

Argued June 14, 1974.

Decided Sept. 26, 1974.

Gerald S. Lubitsky, Toledo, Ohio, for Fraternal Order of Police Lodge No. 40; Richard M. Neller, Toledo, Ohio, on brief.

George R. Royer, Toledo, Ohio, for applicant-intervenor on brief for Toledo Police Patrolmen's Ass'n.

John J. Burkhart, Chief Counsel, Toledo, Ohio, on brief for Robert Duck, and others.

Merritt W. Green, II, Toledo, Ohio, on brief for Afro-American Patrolmens League, and others.

Feinberg, Meyers, Schumacher & Schumacher, by Robert H. Schumacher, Minneapolis, Minn., for Minneapolis Police Federation of Minneapolis, Minn., for amicus curiae.

George R. Royer, Toledo, Ohio, for Ohio Union of Patrolmen's Ass'n and Toledo Police Patrolmen's Assoc., Inc.

Before McCREE, LIVELY and ENGEL, Circuit Judges.

LIVELY, Circuit Judge.

This civil rights action is concerned with requirements for promotion within the police department of Toledo, Ohio. The plaintiffs in the district court were two black patrolmen and an association open to all members of the Toledo safety forces, with a membership composed largely of black policemen. Both of the individual plaintiffs have taken examinations for promotion to sergeant in the Toledo Police Department on a number of occasions, and each has passed the examination several times. However, neither of the individual plaintiffs has been promoted to sergeant. The defendants are the chief of police, the city manager, the safety director, the members of the Toledo Civil Service Commission and its executive director. The complaint alleges violations of 42 U.S.C. §§ 1981 and 1983 and 42 U.S.C. § 2000d in addition to denial of constitutional rights guaranteed by the Thirteenth and Fourteenth Amendments.

Three separate groups sought to intervene in the action. The court denied intervention to the Fraternal Order of Police and the Toledo Police Patrolmen's Association, two groups which claimed to have a "joint exclusive" right to represent Toledo patrolmen in bargaining with the City on matters concerning wages, conditions of employment, "and otherwise." This right of representation exists by virtue of a provision of the Toledo Municipal Code. The court granted intervention to 15 white patrolmen who had passed the most recent line sergeant examination and had been chosen for promotion from patrolman to sergeant prior to the dates this suit was filed.

Following several days of proof, the district court concluded that the plaintiffs had carried their burden of demonstrating that discriminatory elements were present in the practices followed by the Toledo Police Department in promoting to command positions and that it was necessary to eliminate the discriminatory features of the system in order to avoid the perpetuation of a racial imbalance which was found to exist. The court specifically found that (1) a rule requiring a patrolman to have five years service before becoming eligible to take the examination for sergeant and two years of service in each succeeding rank before becoming eligible for examination for the next higher rank, and (2) a rule which gave a "bonus" for seniority, had a discriminatory effect upon promotion in the Toledo Police Force. The opinion of the district court is reported at 366 F.Supp. 1095.

The original defendants and the 15 intervening defendants have appealed, as have the two organizations which were

denied intervention. All appeals were heard by a single panel of the court on the same day and will be disposed of in this opinion.

■■ The unsuccessful applicants for intervention maintain that as statutory bargaining agents for all patrolmen they were entitled to intervention as a matter of right under Rule 24(a), Fed. R.Civ.P., or in the alternative, should have been permitted to intervene under Rule 24(b). It is alleged that the district court order enjoining all promotions and appointments under existing practices will require the City of Toledo to breach its collective bargaining agreement with the representatives of the patrolmen. It is also contended that the Fraternal Order of Police should be permitted to assert the right of all the citizens of Toledo to have a high quality police department. We do not believe that either of the organizations established that it qualified for intervention as a matter of right under Rule 24(a). The rights of the patrolmen who are members of the Fraternal Order of Police and the Toledo Police Patrolmen's Association were adequately represented in this action by the existing parties and the 15 white patrolmen who were permitted to intervene. An applicant for intervention has the burden of showing that representation by existing parties is inadequate. Edmondson v. State of Nebraska ex rel. Meyer, 383 F.2d 123, 127 (8th Cir. 1967); 3B Moore's Federal Practice, para. 24.09–1[4]. The provisions of the collective bargaining contract must give way to the constitutional requirement of equal protection, and the fact that these applicants have such agreements with the City of Toledo does not establish that they are entitled to intervention as a matter of right. See Southern Illinois Builders Association v. Ogilvie, 471 F.2d 680, 687 (7th Cir. 1972). Intervention under Rule 24(b) is addressed to the sound discretion of the trial court. Hatton v. County Board of Education of Maury County, Tennessee, 422 F.2d 457, 459 (6th Cir. 1970). We find no abuse of discretion in the denial of intervention in this case.

■■ The defendants challenged the right of the plaintiffs to proceed in a class action under Rule 23, Fed.R.Civ.P. It is their contention that the possible class consists of no more than the 35 minority group members who were eligible to take the most recent examination for line sergeant or the 17 members of that group who actually took the examination. In their complaint the plaintiffs sought to represent a class "composed of all present and future minority members of the Toledo Police Department who have been discriminated against by Defendants' use of unvalidated and culturally biased tests, practices, and procedures, . . . ." The district court certified the class to include all present and future minority police officers, and we hold that this class is so numerous as to make joinder of all impracticable. It seems evident that the plaintiffs adequately represent the members of this class and there is no claim that questions of law or fact common to all do not exist in the case or that the claims of the representatives are not typical of those of the class. We have held that class actions are properly utilized in cases involving alleged discrimination in employment practices. Manning v. International Union, UAW, 466 F.2d 812 (6th Cir. 1972), cert. denied sub nom., Manning v. General Motors Corporation, 410 U.S. 946, 93 S.Ct. 1366, 35 L.Ed.2d 613 (1973). As this court pointed out in Tipler v. E. I. duPont deNemours & Company, 443 F.2d 125, 130 (1971), a suit by a single employee which is not brought as a class action "is perforce a sort of class action for a fellow employee similarly situated" when it attacks the employment practices of the employer on grounds of discrimination. We conclude that the district court correctly determined that this case should proceed as a class action.

■■ The defendants have seriously maintained in the trial court and on appeal that the plaintiffs should be barred

from obtaining relief in this action by the equitable doctrine of laches. It is claimed that the plaintiffs made no protest or complaint at the time the most recent examination for line sergeant was given or when the eligibility list was posted, but waited until a day or two before the appointments were to be made before filing this action. We fail to see how any of the original defendants were prejudiced in any way by this delay on the part of the plaintiffs. Both a lack of diligence on the part of the plaintiffs and prejudice to the defendants is necessary to justify a court's refusal to consider a claim on the basis of laches. Costello v. United States, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); Gardner v. Panama Railroad Company, 342 U.S. 29, 31, 72 S.Ct. 12, 96 L.Ed. 31 (1951). Although the 15 intervening defendants asserted that they were prejudiced by the delay in bringing the action since they had spent many hours studying for the examination for sergeant which was given in April 1973, had successfully passed the examination and earned a place on the eligibility list and ultimately been chosen for promotion, we cannot hold that a delay of less than four months in filing suit to vindicate constitutional rights is so unreasonable as to require its dismissal. However, we agree with the district court that the situation with respect to lieutenants and captains is different. Upon a balancing of the equities, the district court found that appointments made from old promotion lists to the rank of lieutenant and captain should be permitted to stand. We find no abuse of discretion in the district court's treatment of the issue of laches. Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 534, 76 S.Ct. 946, 100 L.Ed. 1387 (1956).

On the merits of the case the original defendants maintain that they were entitled to an order of dismissal because the plaintiffs produced no evidence of a history of racial discrimination in the 'Toledo Police Department and that mere statistics are not sufficient to make a prima facie case. The court undoubtedly relied on these statistics which showed that the minority population of Toledo was 16 percent and that the breakdown by race within the police department disclosed that only 8.2 percent of the members of the Department were of minority races. Furthermore, at the time of the trial there was one black lieutenant out of 39, no black sergeants out of 80 and no black officers above the rank of lieutenant, while out of a total of 621 patrolmen 52 were black and 11 were of Spanish origin. No policeman of Spanish origin had ever held a command position. Although the district court in this case specifically rested its finding on a combination of statistics and other evidence, we note that at least two circuits have held that a prima facie case of discrimination in hiring may be made on statistics alone. In Carter v. Gallagher, 452 F.2d 315 (8th Cir. 1971), cert. denied, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972), it was held that statistical evidence can make out a prima facie case of discrimination and that neither Section 1981 nor 1983 contains a requirement that discrimination be willful or intentional. In Morrow v. Crisler, 479 F.2d 960 (5th Cir. 1973), it was held that the fact that there were no black highway patrolmen on the state force of Mississippi which had a black population of 36.7 percent was sufficient to support the conclusion of the district court that the hiring practices of the department violated the Equal Protection Clause of the Fourteenth Amendment.

The district court referred several times to the pending case of Sarabia v. Duck, which concerned alleged racial discrimination in police hiring practices of the City of Toledo. Since no findings or judgment had been entered in that case, the appellants maintain that the district court should not have relied upon evidence adduced in that action. We do not view the references of the Sarabia case made by the district court to indicate that it was basing its findings or judgment in this action on anything other than the evidence which was heard at the trial of this case. Nor was the

court required to go outside the record in deciding this case. The defendant, Angelo T. Tokles, Executive Director of the Toledo Civil Service Commission staff, testified that prior to November 1972 the entrance level examination of the Toledo Police Department was a "general abilities type test" and was not concerned with the duties of a patrolman, that, is, it was not "job-related." Furthermore, if an applicant for appointment as patrolman successfully passed the written examination he was required to submit to an oral interview conducted by a panel consisting of two technicians and the police chief or his representative. This interview was totally unstructured. There was no procedure for determining the questions which would be asked or the criteria which would be relied upon in carrying the interview forward. The chief of police asked most of the questions and each member of the panel assigned a score for the interview. The scoring of the interview was entirely subjective. The three scores were averaged and this average counted 30 percent toward the total score which determined whether the applicant became a member of the police force.

▬▬ We believe that the fact that the entrance level examination employed by the defendants prior to November 1972 was a general intelligence test which rewarded verbal skills and that in addition to this test 30 percent of an applicant's total score was derived from a completely unstructured and totally subjective interview, when considered with the statistical imbalance of minority representation on the police force, fully supports the district court's determination that racial discrimination existed in the police hiring practices. We also hold that the district court correctly concluded that two elements of the promotion system of the Toledo Police Department tended to perpetuate the racial imbalance that existed among officers above the rank of patrolman. The percentage of black patrolmen eligible under the Department's rules to take the most recent examination for promotion to line sergeant was significantly smaller than the minority representation on the force as a whole. This indicated that even though there had been some correction of past discrimination in initial hiring of minority policemen, practices within the promotion system were preventing members of minorities from receiving their proportionate share of promotions. The rule which required five years service as a patrolman before one became eligible to take an examination for sergeant and that which conferred extra credit for mere length of service were held to have no real relation to ability to perform in the higher rank. More significantly, the court found that these two rules tended to freeze the status quo of an almost exclusively white command corps which was established by prior discriminatory practices.

▬▬ There was a great deal of evidence in the case on the job-relatedness of the most recent line sergeant examination which was given in April 1973 and upon the basis of which the 15 intervenors were scheduled for promotion from patrolman to sergeant. The court held that the plaintiffs had failed to prove that the April promotion examination was itself unvalidated or culturally biased. It held that the examination was job related insofar as any written examination can determine the qualities required for a police command position. The appellants maintain that the finding by the court that the most recent examination was job related required dismissal of the complaint. However, the plaintiffs did not rely solely on the fact that the examination was allegedly non-job related. They specifically attacked the five-year service requirement and the rule providing additional credit for mere seniority. In Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Service Commission, 482 F.2d 1333 (2d Cir. 1973), the plaintiffs claimed that a written examination violated their right to equal protection. The case involved black and Puerto Rican applicants for

appointment to a police force and the statistics showed a serious imbalance in the numbers of minority policemen in comparison with the total number of Negro and Puerto Rican residents of the city. Although the court held that there was no showing of substantial de facto discrimination in a written promotion examination and reversed the district court's establishment of hiring quotas for command officers, it is significant that a suggested solution to the problem of too few minority officers in command positions consisted of requiring a shorter time in service for eligibility and the elimination of seniority points. These are precisely the two elements in the Toledo promotion system which the district court found to be discriminatory in this case.

 The appellants contend that since the district court found that the written examination for line sergeant was job related and could not conclude from the evidence that it was in itself discriminatory, the court was without power to enjoin further use of the examination and seniority lists based upon it. We have not heretofore decided this issue in the context of suits under Sections 1981 and 1983 contesting employment practices of a municipal body, but have dealt with it several times in private employment cases under Title VII of the Civil Rights Act of 1964 which the Eighth Circuit referred to in Carter v. Gallagher, *supra*, as "analogous" to the present type action. In Head v. Timken Roller Bearing Company, 486 F.2d 870 (6th Cir. 1973), we held that a system of seniority and transfer which appeared fair and neutral on its face but in practice perpetuates prior discrimination is itself illegal under Title VII. In Sims v. Sheet Metal Workers International Association, Local Union # 65, 489 F.2d 1023 (6th Cir. 1973), the district court found that tests for an apprenticeship program and entry into a journeyman program were valid and not facially discriminatory This court held that this finding was not clearly erroneous but that employment of such tests

in a setting where their use furthers racial discrimination constitutes a violation of Title VII. In both opinions we relied upon the language of the Supreme Court in Griggs v. Duke Power Company, 401 U.S. 424, 430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971), that:

> Under the Act, practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to "freeze" the status quo of prior discriminatory employment practices.

In *Sims* the wide discretion enjoyed by the testing committee was pointed to as a means of perpetuating past discrimination.

 We hold that the district court properly concluded that the Equal Protection Clause of the Fourteenth Amendment and the provisions of Sections 1981 and 1983 were violated by a promotion system which: (1) began with an imbalance in favor of white police officers because of past discrimination in hiring, and (2) combined a racially neutral and job-related written test with a requirement of five years in service for eligibility to be examined for promotion to the first level of command and granted "bonus" points toward promotion for seniority.

 The appellants point out that there was no specific evidence concerning promotions above the level of sergeant and that the evidence does not support the findings of the district court that the promotion requirements for lieutenant and captain also perpetuate past discriminatory practices. Since an arbitrary requirement of service in the next preceding rank is required for each of these promotions and since extra points for seniority are allowed, we believe that the district court could reasonably conclude from the evidence that the requirements for promotion to these two grades also tended to perpetuate past discriminatory practices at the entry level. The fact that none of the plaintiffs was eligible to take the examination for lieutenant or captain is immate-

rial since the very requirements which are under attack are at least partially responsible for the fact that no black member of the Toledo Police Force is presently eligible for promotion to lieutenant or captain. The complaint specifically sought an adjudication with respect to the promotion requirements to these two grades as well as to that of sergeant. The statistical evidence that only three black patrolmen have ever advanced to command positions in the Toledo Police Department was sufficient to warrant the district court's conclusion that the entire seniority and promotion system had the effect of keeping alive the results of past discrimination in hiring.

While we agree with the conclusion of the district court that the five-year requirement for promotion from patrolman to sergeant was not shown to have any relationship to the requirements of the sergeant's job and that this in-service requirement and the two-year requirement for promotions above the rank of sergeant appear to have been arbitrarily established, we find no basis in the record for the court's order that the in-service requirements for all promotions be reduced to one year. Actually, a new member of the policy force is in a probationary status for the first year. He must attend a policy academy which is conducted by the Department for four months, and then serves as a probationary officer for the ensuing eight months. While seniority and experience should not be the sole, or even the primary basis upon which promotions are made, we believe the district court failed to strike a proper balance between the right of the people of Toledo to the protection of a police department where only seasoned and qualified officers are advanced to command positions and the necessity to obliterate as quickly as possible the present racial imbalance which exists in that Department. Upon remand the district court will hold further hearings and make a determination, based on such evidence as the parties may pro-

duce, of the proper in-service requirement for promotion at each level in the Toledo Police Department.

The original defendants contend on appeal that it was an abuse of discretion for the court to require the City to pay for and accept the input of an expert chosen by the plaintiffs in constructing new promotion examinations. We find no abuse of discretion in this provision of the district court's judgment. There was abundant testimony from city officials that they were dissatisfied with the existing examinations and were in the process of changing them. In view of the recognition of the need to eliminate the results of past discrimination while constructing a set of examinations that is valid and job related, it seems reasonable to provide for substantive contributions from a representative of the group who have been deprived of promotions by reason of the past discriminatory practices. We also find no abuse of discretion in the court's act of enjoining all promotions pending completion of new eligibility lists since existing lists were based in part on practices which have been held to violate the rights of plaintiffs.

All defendants have objected to a number of evidentiary rulings by the court. The objections of the original defendants are concerned primarily with evidence offered with respect to the last line sergeant examination given by the City. In view of the court's finding that this test was job related and not culturally biased, if these rulings were incorrect, it was harmless error. The intervening defendants argue that evidence which they offered and which the court rejected tended to show that poor performance of minority candidates on the written examination resulted from factors other than discriminatory promotion practices. They attempted to show that the successful white candidates had studied harder and been more diligent in their preparation. The district court did not base its judgment in this case on its finding that the mi-

nority candidates performed poorly on the written examination. It determined that minority candidates were discriminated against at the time they sought employment as police officers and that the total promotion system, particularly the five-year service requirement and the system of bonus points for seniority put them at a disadvantage in obtaining promotions to command positions. We hold that the district court did not err in refusing this evidence. On page 22 of their brief the intervening defendants appear to concede that past hiring practices of the Toledo Police Department resulted in very few minority officers being eligible for promotion. This is the very basis upon which the district court decided the case.

In their answer the intervening defendants included a cross-claim against the original defendants. The trial court failed to enter any orders with respect to this pleading. Upon remand, an appropriate order will be entered disposing of the cross-claim.

This case is remanded to the district court for the limited purposes set forth herein and in all other respects the judgment is affirmed. Costs will be taxed to appellants.