See also D.C., 90 F.R.D. 633.

**Victoria NASH, Plaintiff,**

v.

**CITY OF OAKWOOD, OHIO, Defendant.**

**No. C–3–80–375.**

United States District Court,
S. D. Ohio, W. D.

March 25, 1982.

all may be observed by a federal court, even if     not applicable in the state court.").

**84**

Steven M. Fitten, Dayton, Ohio, for plaintiff.

Neil F. Freund, Brian Weaver, Dayton, Ohio, for defendant.

DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR PRELIMINARY CLASS CERTIFICATION; DECISION AND ENTRY OVERRULING MOTION OF RAYMOND JORDAN, SEEKING RECONSIDERATION OF EARLIER DECISION DENYING HIM LEAVE TO INTERVENE

RICE, District Judge.

## I. INTRODUCTION

This matter is before the Court pursuant to the Plaintiff's Motion for Preliminary Class Certification under Fed.R.Civ.P. 23(c)(1) (Doc. # 12), and upon the Motion of Raymond Jordan, for reconsideration of his motion to intervene as a party plaintiff. (Doc. # 37). For reasons which will later be articulated, the Court has concluded that the motion for class certification can be granted in part, but the motion to intervene must be denied.

On September 12, 1980, Plaintiff Victoria Nash commenced the present action, alleging that the Defendant, the City of Oakwood, Ohio, had committed discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983, and, the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3766(c)(1). Specifically, Plaintiff, a black female, alleged that on September 6, 1980, she had taken written and physical examinations for a public safety position with the City of Oakwood, but had been rejected for employment because she failed to successfully complete part (e) of the City's physical agility test, which required an applicant to carry two rolled fire hoses, each weighing seventy-eight pounds, up and down four flights of stairs and across 100 feet of level ground. Plaintiff further alleged that the agility test discriminated against women on the basis of sex, because, *inter alia*, it was unrelated to job performance, and employed arbitrary criteria which invidiously discriminated against females. In addition, Plaintiff contended in the Complaint that the City of Oakwood discriminated on the basis of race because, *inter alia*, it had no black residents, had never recruited in the black community, and employed tests which had a barring effect on blacks and other minority applicants. Based on these allegations, Plaintiff sought to represent a class described as:

> [A]ll blacks and women who have applied for the position of public safety [officer] with Defendant and all blacks and women who might have been employed by Defendant but for its reputation for engaging in discriminatory practices, and who have been and continue to be or might be adversely affected by the practices [of Defendant].

Complaint, ¶ 7.

On December 12, 1980, Plaintiff filed a motion for class certification, contending that the present action constituted a proper class action under Fed.R.Civ.P. 23(a) and (b)(2). Prior to the disposition of that motion, however, Raymond Jordan, a black male who had applied for a position as a public safety officer with the City of Oakwood, filed a motion to intervene as party plaintiff. In a decision filed June 30, 1981, and reported as *Nash v. City of Oakwood, Ohio*, 90 F.R.D. 633 (S.D.Ohio 1981) (*Nash*), this Court overruled Jordan's motion to intervene, based on the fact that Nash's Complaint failed to set forth facts sufficient to support a claim for racial discrimination. *See, id.* at 637. The Court did, however, indicate that Jordan's motion could be renewed, "if and when Plaintiff has amended

her Complaint to cure this defect." *Id.* at 637–638. In accordance with the Court's suggestion, Plaintiff did file an Amended Complaint, on July 14, 1981, in which she attempted to remedy the deficiencies which had been noted by the Court. In addition, on September 24, 1981, Jordan filed a Motion for Reconsideration to Intervene as Party Plaintiff. Finally, on January 21, and 26, 1982, oral hearings were held, at which time Plaintiff and Jordan were permitted to present testimony relative to the class certification and intervention issues. With this procedural background in mind, the Court now turns to consideration of the issues raised by Plaintiff's request for preliminary class certification, and by Jordan's motion to intervene.

## II. MAINTENANCE OF THIS ACTION AS A CLASS ACTION

As was previously noted, in her original Complaint, Plaintiff sought relief on behalf of a class consisting of all blacks and women who have applied for the position of public safety officer with Defendant, or who might have applied but for Defendant's discriminatory practices. In the earlier discussion referred to above, this Court limited the permissible scope of discovery to those matters pertinent to Plaintiff's sexual discrimination claims, and to the extent possible, to the determination of whether this cause might be maintained as a class action. *Nash, supra,* 90 F.R.D. at 636. In establishing these restrictions, the Court relied on the absence of a cognizable racial claim in the Complaint, and noted specifically that:

> [P]laintiff is entitled to no discovery from defendant on her claim of racial discrimination. The Complaint is devoid of any factual allegations indicating that defendant discriminated against plaintiff on the basis of race as opposed to sex....
>
> ....
>
> The Court does not discount the possibility that plaintiff can cure the defect in

her complaint by amending same to set forth some facts regarding the racial discrimination *which she feels that she, herself, suffered in connection with her application with defendant for the position of public safety officer.* However, the Court will not, on the basis of the present complaint, permit plaintiff to bootstrap a claim of racial discrimination solely by virtue of the fact that she is black.

*Id.* at 635–636 (emphasis added).

In the Amended Complaint filed on June 14, 1981, Plaintiff attempted to cure the defect by alleging, in paragraph 17, that "Plaintiff and all minority P.S.O. applicants have received either unacceptable written test scores and interview ratings, or scored below white applicants placed on eligibility hiring lists."

■ The materials presently before the Court indicate, without dispute, that Plaintiff Nash did pass the written examination given by the City of Oakwood, with a score of 85 (Thompson deposition, p. 100), but failed the physical agility examination (Amended Complaint, ¶ 14); Answer to Amended Complaint, ¶ 9). The undisputed facts further indicate that if an applicant failed any portion of the physical agility test, he would be disqualified, and would be precluded from consideration for employment as a public safety officer (Thompson deposition, p. 87; Amended Complaint, ¶ 14; Answer to Amended Complaint, ¶ 9). Moreover, the eligibility hiring list is compiled based on those persons who have *successfully* completed each portion of the examination (Thompson deposition, pp. 45–46). Ranking on the eligibility list is based on the applicant's score on the written test, and his score in an oral interview, each of which is given equal weight (Thompson deposition, pp. 48, 51, 58, 59).[1] Based on these facts, which indicate that Plaintiff, having failed the physical agility test and passed the written test, was disqualified for a reason *unrelated* to her written test score,

---

1. In order to be on the eligibility list, an applicant must successfully pass the physical agility test. One cannot achieve a certain number of points on that test, however, since it is strictly a pass-fail situation. Therefore, as long as one passes this physical agility test, his or her chances of being hired are not affected by how well or how poorly he or she does on the test.

it is apparent that Plaintiff is not a member of the class of discriminatees she purports to represent, at least insofar as membership in that class is premised on the alleged racially discriminatory nature of the Defendant's written testing process.

Fed.R.Civ.P. 23(a) provides that:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The Supreme Court has indicated that in order for a plaintiff to be considered a proper class representative under Rule 23(a), he "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977), quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974) (*Rodriguez*). Absent such a showing, the plaintiff does not have standing, or is "not eligible to represent a class who did allegedly suffer injury." *Rodriguez*, 431 U.S. at 404, 97 S.Ct. at 1897; *accord, Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. at 216, 94 S.Ct. at 2929. Thus, in the present case, because Nash's rejection was not based upon a failure to pass the written exam, or even upon a low hiring position on the eligibility list due to a culturally biased test, she lacks standing to represent a class composed of persons who may have been affected by those practices. Simply put, Plaintiff Nash has not suffered an injury common to the class of black persons she desires to represent. *Senter v. General Motors Corp.*, 532 F.2d 511, 518 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976) (*Senter*).

As was indicated, Nash's employment rejection was premised upon her failure to pass the physical agility test, which automatically precluded her from further consideration by the City of Oakwood. Specifically, Nash failed to successfully complete at least that portion of the physical agility test which required an applicant to carry two seventy-eight pound fire hoses up and down four flights of stairs and across 100 feet of level ground (Complaint, ¶ 14; Answer to Amended Complaint, ¶ 9). As was noted earlier, Nash's Amended Complaint alleges that the physical agility test discriminates on the basis of sex because, *inter alia*, it imposes standards which are adapted to male physiology and cannot be readily surmounted by females, does not predict or measure physical fitness, and is unrelated to job performance. Accordingly, the class which Nash seeks to represent may be defined as:

All past, present, and future female applicants for the position of public safety officer with the City of Oakwood, Ohio, who have been and continue to be or might be adversely affected by the practices of Defendant.[2]

---

2. This definition differs slightly from that proposed in the Amended Complaint, which included "all females ... who might have been employed by Defendant but for its reputation of engaging in discriminatory employment practices." (Amended Complaint, ¶ 9). This portion of the proposed class definition has been eliminated because there are no allegations in the Amended Complaint which indicate either that the City of Oakwood had a reputation for sexual discrimination or that Oakwood's *reputation* deterred any females from applying for employment. *Equal Employment Opportunity Comm'n v. Detroit Edison Co.*, 515 F.2d 301, 311–312 (6th Cir. 1975), vacated and remanded on other grounds, sub nom. *Utility Workers Union v. Equal Employment Opportunity Comm'n*, 431 U.S. 951, 97 S.Ct. 2668, 53 L.Ed.2d 267 (1977). Moreover, as was noted by the Sixth Circuit in the cited case, inclusion of such a class "would create serious problems because the identification of individual members would be virtually impossible as would be a determination of the availability of openings for such persons." *Id.* at 312. While the testimony of Pamela Morrison, a witness at the class certification hearing, indicated that she knew of no blacks in the Oakwood Public Safety Department, and that she did not want to work there knowing that no black females

Given the above class definition, the Court must next determine whether preliminary certification of such a class would be appropriate under Fed.R.Civ.P. 23. As a prefatory matter, the Court notes that Plaintiff unquestionably appears to be a member of the class she seeks to represent, since she was a female applicant for the position of public safety officer with the City of Oakwood, and was rejected for employment because she failed the physical agility test. In addition to the class membership requirement, Rule 23 provides that the class must be "so numerous that joinder is impracticable." In the present case, the facts presently before the Court indicate that the physical agility test under consideration was instituted by the City of Oakwood in 1974, after City officials and the City physician's office had determined that some measurement of agility and physical skills should be required prior to employment (Kelly deposition, p. 13). The only statistical evidence thus far submitted to the Court reveals that from November, 1979 to August, 1981, approximately thirty-three women applied for a public safety officer position with the City of Oakwood. During this time, fifteen or sixteen [3] women took the physical agility exam given by the City, and failed various portions of the exam, including the hose carry, the hose drag, the obstacle course, and the one and one-half mile run. (Physical Agility Test Statistics, attached to Doc. # 40, and stipu-

lated to by both Plaintiff and Defendant on January 21, 1982). No female applicant has ever passed the City of Oakwood's physical agility test.

In determining whether the numerosity requirement of Rule 23 is satisfied, the Sixth Circuit has adhered to the rule that "[t]here is no specific number below which class action relief is automatically precluded. Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter*, 532 F.2d 511, 523 n.24 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976), citing *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970). Under the cited authority, then, denial of class action status would not be justified solely on the basis that, at most, only thirty-three potential class members have been disclosed. However, since the potential female class members applied for positions with the City of Oakwood, the reasonable inference which may be drawn, *see*, 532 F.2d at 523, is that the City of Oakwood has possession of their names, and very possibly their addresses. Thus, under the facts of this case, it would appear that joinder of the women applicants would not be impracticable, and that, consequently, class certification should be refused. Such a result cannot be reached herein, however, in light of the fact that Plaintiff has sought

were on the work force, these statements clearly relate to the City's alleged reputation for engaging in racial discrimination, which was specifically raised by the Amended Complaint. *See*, Amended Complaint, ¶ 23a, b.

As an additional matter, the Court notes that the past applicants who may be included in the class herein must be limited to those women who applied for the position of public safety officer with the City of Oakwood on September 12, 1974, and thereafter. The Supreme Court has indicated that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). In actions such as the present, the Sixth Circuit has indicated that the appropriate limitations period to be applied is the six year

period found in Ohio Rev.Code Ann. § 2305.07 (Page). *See, Mason v. Owens-Illinois, Inc.*, 517 F.2d 520, 521–522 (6th Cir. 1975); *Garner v. Stephens*, 460 F.2d 1144, 1146–1148 (6th Cir. 1972). *Accord: Schorle v. City of Greenhills*, 524 F.Supp. 821, 827 (D.C.S.D.Ohio 1981) (applying § 2305.07 to all § 1983 actions arising in Ohio). Thus, while the filing of Plaintiff's Complaint herein has tolled the applicable statute of limitations for all claims of asserted class members which arose on September 12, 1974 or thereafter, all claims prior to that date would be barred by the statute of limitations.

**3.** *This ambiguity in total numbers of persons* taking the physical agility test is a result of the figures reported for the September 6, 1980 examination. While four women reported for that test, only three women are listed as having failed the exam. No women, however, are listed as having passed the agility test.

to represent not only past applicants for the position of public safety officer, but has additionally requested that future applicants for the position of public safety officer be included in the class definition.

Where a class representative seeks relief on behalf of future applicants, the Sixth Circuit has indicated that the numerosity requirement of Rule 23 would be satisfied. *Afro-American Patrolmens League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974). In the lower court decision in that case, the district court certified a class consisting of "all present and future minority members of the Toledo Police Department who have been discriminated against by the defendants' use of invalidated and culturally biased tests, practices, and procedures." *Afro-American Patrolmens League v. Duck*, 366 F.Supp. 1095, 1099 (N.D.Ohio 1973), rev'd in part on other grounds, 503 F.2d 294 (6th Cir. 1974). In approving such a class, the district court stated as follows:

> At the outset of the case, the defendants contended that the only persons who could properly be considered as members of the class of plaintiffs were those individuals who were eligible to and did take the promotional civil service examination for sergeant, and that those persons were not too numerous to be named as individual parties plaintiff. However, it seemed clear at the time, and the evidence made it much clearer, that the really important persons affected by this litigation are those minority members whose interest in becoming members of the police department in the future is gravely affected by promotional practices in that department. . . . There are unquestionably large numbers of such persons, but who they are cannot be presently ascertained. Class actions are particularly well suited

to the determination of the rights of such groups.

*Id.*

On appeal, the defendants challenged the class certification, contending that the potential class consisted "of no more than the 35 minority group members who were eligible to take the most recent examination for line sergeant or the 17 members of that group who actually took the examination." 503 F.2d at 298. The Sixth Circuit rejected this contention, stating:

> The district court certified the class to include all present and future minority police officers, and we hold that this class is so numerous as to make joinder of all impracticable. . . . We have held that class actions are properly utilized in cases involving alleged discrimination in employment practices. . . . As this court pointed out in *Tipler v. E. I. duPont deNemours & Company*, 443 F.2d 125, 130 ([6th Cir.] 1971), a suit by a single employee which is not brought as a class action "is perforce a sort of class action for a fellow employee similarly situated" when it attacks the employment practices of the employer on grounds of discrimination.

503 F.2d at 298 (citation omitted). *Accord: Cross v. National Trust Life Insurance Co.*, 553 F.2d 1026, 1029–1030 (6th Cir. 1977). *See also, Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975) (indicating liberal treatment of numerosity should be accorded in 42 U.S.C. § 1983 action where plaintiff sought injunctive relief for future class members); *Gurmankin v. Costanzo*, 626 F.2d 1132, 1134–1135 (3d Cir. 1980) (refusing to discard numerosity requirement entirely even in employment discrimination situations, but noting also that numerosity may be less of an obstacle where classwide discrimination and *prospective* remedial relief, rather than damages, are involved).[4]

---

4. The position taken in *Gurmankin v. Costanzo* is not inconsistent with that which has been followed by the Sixth Circuit. While this Circuit has adopted a liberal approach to numerosity, it has never suggested that the concept should be discarded in employment discrimination actions. Given the facts of *Gurmakin v.*

*Costanzo*, including the identification of only six potential class members, of whom only two were found to be qualified class members, *see, id.* at 1134, it is apparent that the denial of class action status in that case was appropriate.

This Court is unable to perceive a reasoned distinction between the class situation herein, and that involved in *Afro-American Patrolmens League v. Duck.* In that case, while thirty-five minority group members were eligible to take the challenged promotional examination, only seventeen members actually took the test. *See*, 503 F.2d at 298. Similarly, in the present case, while there were thirty-three female applicants for the position of public safety officer during the less than two year time span covered by the statistics submitted to the Court, approximately sixteen women took the physical agility test (Physical Agility Test Statistics attached to Doc. # 40). In addition, in both cases, the class representatives sought to represent a class which included future applicants or employees. Thus, the Court must conclude that under the circumstances of this case, the numerosity requirement of Fed.R.Civ.P. 23(a) has been satisfied.

Defendant has not seriously contested the satisfaction of the commonality and typicality requirements of Rule 23(a), beyond arguing that Plaintiff's claim, since it can be based only on her failure of the physical agility test, cannot be representative of claims based on racial discrimination. However, the Court's previous limitation of the permissible class to past, present, and future women applicants, without regard to racial classification, moots this objection. Without repeating the points previously discussed, it is apparent that the Amended Complaint herein satisfies the common question requirement of Rule 23, since it alleges that sexual discrimination in hiring was practiced against the entire class of women applicants. *See, Senter, supra*, 532 F.2d 511, 524 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). Further, Plaintiff's claims appear to be typical of those of the class, in light of the fact that she failed a physical agility test which she claims discriminates against women on the basis of sex.

The final matter to be addressed under Rule 23(a) is whether the class representative will "fairly and adequately protect the interests of the class." In *Senter*, the Sixth Circuit outlined two criteria which should be considered in making this determination: "1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." 532 F.2d at 525, citing *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973). Defendant has not disputed that Plaintiff has a common interest with unnamed *female* class members, but instead has contended first, that Plaintiff has not affirmed her ability to finance this lawsuit, and second, that because Plaintiff has sought punitive damages, she will not effectively press the claims for injunctive relief. The Court does not view these matters as significant, particularly since, as will be set forth below, Plaintiff is not entitled to punitive damages, and Defendant has offered nothing to suggest either that its predictions will be fulfilled, *see, Muth v. Dechert, Price & Rhoads*, 70 F.R.D. 602, 605 (D.C.E.D.Pa. 1976), or that Plaintiff's interests are antagonistic to those of the class. *See, Senter*, 532 F.2d at 525. It should be pointed out that the decision to certify a class is "not irrevocable," *Link v. Mercedes-Benz of North America, Inc.*, 550 F.2d 860, 864 (3d Cir.), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977), and that under Rule 23, the Court is "free to decertify the class for a proper reason." *Id.* Thus, should Plaintiff later appear to be an inadequate representative, the class herein could be decertified. At present, however, there is no evidence either of an antagonism of interests, or of Plaintiff's inability to prosecute this action. Therefore, the Court concludes that Plaintiff is an adequate class representative under the standards established by the Sixth Circuit.

■ After determining that Fed.R.Civ.P. 23(a) has been satisfied, the Court must next consider whether the action may be maintained under any of the subdivisions contained in 23(b). *Senter, supra*, 532 F.2d at 525. Plaintiff has requested certification only under paragraph 2 of Rule 23(b), which provides in pertinent part, that:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Defendant has contested the appropriateness of certification of the present action under Rule 23(b)(2), and has argued that class action status must be evaluated under Rule 23(b)(3). Defendant's primary contention in this regard is that because $6,000,000 in punitive damages has been requested by Plaintiff, injunctive relief has become secondary to her pursuit of damages. However, the Supreme Court has emphatically indicated that municipalities are not liable for punitive damages under 42 U.S.C. § 1983. *See generally, City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). In addition, the majority of federal courts, including the Sixth Circuit, have ruled that punitive damages may not be recovered in Title VII actions.[5] *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 375 & n.17, 99 S.Ct. 2345, 2350 & n.17, 60 L.Ed.2d 957 (1979); *Equal Employment Opportunity Commission v. Detroit Edison Co.,* 515 F.2d 301, 308–309 (6th Cir. 1975), vacated and remanded on other grounds, sub nom. *Utility Workers Union v. Equal Employment Opportunity Commission,* 431 U.S. 951, 97 S.Ct. 2668, 53 L.Ed.2d 267 (1977). Thus, since punitive damages cannot be recovered against the City of Oakwood, the fact that they have been requested does not detract from the propriety of class certification. Even had punitive damages been recoverable herein, their availability still would not have posed a barrier to certification, since an examination of the Amended Complaint indicates that the primary basis of relief sought by Plaintiff is class-wide, injunctive relief against the alleged discriminatory employment practices of the Defendant. As a final matter, the Court notes that class certification has been granted in situations where both punitive damages and injunctive relief have been sought. *See, United States Fidelity and Guaranty Co. v. Lord,* 585 F.2d 860, 862 (8th Cir. 1978), *cert. denied,* 440 U.S. 913, 99 S.Ct. 1228, 59 L.Ed.2d 462 (1979).

■ Based on the preceding analysis, which indicates that the requirements of Fed.R.Civ.P. 23(a) and (b)(2) have been satisfied herein, the Court concludes that it may appropriately certify as a class the group of women applicants previously described in this entry. Having determined the contours of the applicable class, and the propriety of preliminary certification, the Court will next consider whether Raymond Jordan should be permitted to intervene in this action.

## III. INTERVENTION

■ As was previously indicated, Raymond Jordan, a black male who completed the application and testing requirements

---

**5.** Even if punitive damages were permitted under Title VII, it is doubtful whether Plaintiff could recover such damages herein either on her own behalf, or for the class of women which has been previously defined. While this action was initiated on September 12, 1980, Plaintiff did not file a charge with the EEOC until September 29, 1980. *See,* Amended Complaint, ¶ 7; Exhibit A attached to Amended Complaint. Absent circumstances which would merit a finding of waiver, estoppel, or equitable tolling, it would appear that Plaintiff's Title VII claims are barred. *Zipes v. Trans World Airlines, Inc.,* —— U.S. ——, ——, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). However, because this matter has not yet been presented to the Court for decision, the preceding comment is not intended as a ruling. In any event, the potential dismissal of the Title VII claims has no significant effect on the issue of class certification, since Plaintiff has pled a cause of action under 42 U.S.C. § 1983 as an alternate theory of recovery. Cf. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–460, 95 S.Ct. 1716, 1719–1720, 44 L.Ed.2d 295 (holding that resort to Title VII administrative machinery is not required prior to institution of § 1981 action); *International Union of Electrical, Radio & Machine Workers Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 236, 97 S.Ct. 441, 446, 50 L.Ed.2d 427 (1976) (stressing "independence of Title VII remedies from other pre-existing remedies available to an aggrieved employee.")

for the position of public safety officer with the City of Oakwood, has filed a motion, pursuant to Fed.R.Civ.P. 24, requesting that he be permitted to intervene in this action. According to Jordan's testimony at the motions hearing, he is a thirty-one year old male who presently lives in Akron, Ohio, and who has worked for the Doylestown Police Department, the Summit County Sheriff's Office, and the Portage County Sheriff's Office. He applied for an Oakwood public safety position in 1980, but failed the written examination. Jordan has also taken and failed similar written examinations given by the Kettering, Ohio, and Miamisburg, Ohio, Police Departments. He did pass the Oakwood physical agility test and was told he could apply in the future if he was still interested in a position.

Fed.R.Civ.P. 24 provides for permissive intervention as well as for intervention of right. With regard to the latter, Rule 24(a) provides that:

> Upon timely application, anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject matter of the action, and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Jordan has claimed that Section 706(e) of the Civil Rights Act of 1964 as amended in 1972, 42 U.S.C. § 2000e–5(f)(1), confers an unconditional right upon him, as an aggrieved party, to intervene in the present action. However, an examination of that section indicates that the power of intervention conferred therein is limited to certain situations which are not reflected in the present case. For example, aggrieved persons are given the right to intervene in enforcement actions brought by the Attorney General against a government, govern-

mental agency, or political subdivision. However, the present action is not an enforcement action brought by the Attorney General, and thus, granting intervention on that basis would be inappropriate. The remaining portion of § 2000e–5(f)(1) permits intervention by the Attorney General in actions which are brought by an aggrieved party, and are deemed to be of "general public importance." While this section might permit the Attorney General, under proper circumstances, to intervene in the present action, it does not confer such a right upon the proposed intervenor, Raymond Jordan. Thus, there is no unconditioned right to intervention, granted by statute, which is applicable in the present action.

Jordan has also contended that he has a right to intervene herein because any judgment entered in this action regarding the Defendant's alleged racially discriminatory employment practices would be potentially binding upon him and other class members. It is no longer necessary, for purposes of intervention by right, that a proposed intervenor illustrate that he will be bound by a judgment in a *res judicata* sense. *Atlantis Development Corp. v. United States*, 379 F.2d 818, 822–825 (5th Cir. 1967). Rather, Rule 24 has been broadened so that intervention of right will be allowed where it appears that in a subsequent trial between the intervenor and the defendant, the prior decision would be followed as a matter of *stare decisis. See, id.* at 828. *Accord, Nuesse v. Camp*, 385 F.2d 694, 701–702 (D.C.Cir.1967). In the present case, however, there appears to be no possibility of such an effect, given the Court's previous conclusion that racial discrimination claims are simply not a part of this lawsuit. Therefore, the outcome of the within sexual discrimination lawsuit, contesting the propriety of the physical agility test administered by the Defendant, should not have any effect upon lawsuits challenging an allegedly racially discriminatory written test given by the City of Oakwood.[6] Conse-

---

**6.** The denial of intervention also will not affect, or prejudice Jordan's ability to litigate his dis-

crimination claims against the City of Oakwood. Because Jordan was rejected for em-

quently, the Court cannot find that Raymond Jordan may intervene in the present action as of right under Rule 24(a).

As an additional matter, Jordan has asserted that he should be permitted to intervene under Fed.R.Civ.P. 24(b)(2), which authorizes permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." However, based on the immediately preceding comments, and the discussion earlier in this entry, which indicate a *lack* of legal or factual similarity between the Plaintiff's claims of sexual discrimination and those of the proposed intervenor, who is alleging racial discrimination, permissive intervention is not warranted. Accordingly, the motion for reconsideration of intervention, filed by Raymond Jordan on September 24, 1981, is denied.

### IV. *Conclusion*

Based on the foregoing analysis, the Court concludes that:

1) The Plaintiff's request for preliminary class certification is approved, under the limitations and conditions set forth in this entry;

2) Raymond Jordan's Motion for Reconsideration to Intervene as Party Plaintiff is denied.

---

ployment in 1980, the statute of limitations applicable to any potential claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 would not yet have expired. *See,* footnote 1, *supra.* The status of a potential Title VII claim is uncertain, because the information before the Court does not indicate whether Jordan has filed a Title VII charge against the City of Oakwood. However, the denial of intervention would have no effect on such a claim. While the filing of a Title VII charge by a class representative may satisfy the filing requirement for an entire class, *see, Oatis v. Crown Zellerbach Corp.,* 398

F.2d 496, 499 (5th Cir. 1968); *Accord, Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n.8, 95 S.Ct. 2362, 2370 n.8, 45 L.Ed.2d 280 (1975); *Williams v. Tennessee Valley Authority,* 552 F.2d 691, 692 (6th Cir. 1977), this principle is not applicable to Jordan, since he is not a member of the relevant class herein, and does not present a claim for relief similar to that of Plaintiff Nash. *Foster v. Gueory,* 655 F.2d 1319, 1322 (D.C.Cir.1981). In any event, it is questionable whether Nash has a maintainable Title VII claim. *See,* footnote 5, *supra.*